UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00113-GNS-LLK

DAVID HOUSTON                    PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR             DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff David Houston ("Houston") brings this action for review of the Department of Labor's ("DOL") denial of his claims under Parts B and E of the Energy Employees Occupational Illness Compensation Program Act of 2000 (the "EEOICPA" or the "Act"), 42 U.S.C. §§ 7384-7385s-16. For the reasons stated below, Plaintiff's claim is **DENIED**.

### I. BACKGROUND

#### A. Statutory and Regulatory Background

The EEOICPA provides compensation to individuals who suffer from illnesses as a result of exposure to toxic substances during the course of their work for the Department of Energy ("DOE") and its predecessor agencies. 42 U.S.C. § 7384. Part B of the Act entitles covered employees who develop occupational illnesses to a lump sum payment of $150,000.00. *Id.* §§ 7384s(a)(1), 7384l(7), (15). Part E of the EEOICPA provides additional benefits to certain DOE contractor employees for permanent impairment due to a covered illness. *Id.* § 7385s(2).

##### 1. *Filing a Claim for Benefits*

To obtain benefits under Part B of the Act, a claimant must file a claim with the Office of Workers' Compensation Programs ("OWCP") demonstrating that he developed an illness due to

his exposure to toxic substances while employed at a DOE facility. *Id.* §§ 7384l(7), 7384l(15), 7384s(a). Only three types of illnesses are compensable under Part B: (1) certain beryllium illness, such as chronic beryllium disease ("CBD"); (2) certain cancers; (3) and chronic silicosis. *Id.* §§ 7384s(a)(1), 7384l(7), 7384l(8), 7384l(15); 20 C.F.R. §§ 30.100, -.101.

Sarcoidosis is not compensable under Part B. Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015).[1] Nonetheless, the Division of Energy Employees Occupational Illness Compensation ("DEEOIC") has "recognize[d] that a diagnosis of pulmonary sarcoidosis . . . could represent a misdiagnosis for CBD," which is compensable. *Id.* The DEEOIC's procedure manual therefore requires claim examiners to evaluate Part B claims for sarcoidosis as claims for CBD if the claimant has "a documented history of beryllium exposure."[2] Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015). As a result, a claimant with a history of beryllium exposure who brings a sarcoidosis claim under Part B must meet the statutory criteria necessary to establish a claim for CBD. *Id.* Those criteria are:

> (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established [by abnormal lymphocyte proliferation test performed on either blood or lung lavage cells]) together with lung pathology consistent with [CBD], including—
> (i) a lung biopsy showing granulomas or a lymphocytic process consistent with [CBD]
> (ii) a computerized axial tomography scan showing changes consistent with [CBD]; or
> (iii) pulmonary function or exercise testing showing pulmonary deficits consistent with [CBD].
>
> (B) For diagnoses before January 1, 1993, the presence of—

---

[1] A copy of the procedure manual is available online. *See* Office of Workers' Comp. Programs, U.S. Dep't of Labor, EEOICP Procedure Manual, http://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_15-08.pdf (last visited Mar. 2, 2018).
[2] A claimant's exposure to beryllium is presumed if documentation shows that he worked at a DOE facility when beryllium dust may have been present. 42 U.S.C. § 7384n(a).

(i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
(ii) any three of the following criteria:
(I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
(II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
(III) Lung pathology consistent with [CBD].
(IV) Clinical course consistent with a chronic respiratory disorder.
(V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

42 U.S.C § 7384l(13).

Under Part E of the Act, a DOE contractor employee can obtain additional benefits due to permanent impairment and/or wage loss due to a covered illness resulting from work-related exposure to toxic substances at a DOE facility. 42 U.S.C. § 7385s-1. Part E defines the term "covered illness" as any "illness . . . resulting from exposure to a toxic substance." *Id.* § 7385s. Both sarcoidosis and CBD are therefore compensable under Part E. Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015). In keeping with its recognition that a diagnosis of sarcoidosis can constitute a misdiagnosis for CBD, however, the DEEOIC directs claims examiners evaluating claims for sarcoidosis under Part E to consider whether the claimant has CBD *if* the claimant's medical records show that he has tested positive on a beryllium lymphocyte proliferation test ("BeLPT") or beryllium lymphocytes transformation test ("BeLTT"). *Id.* A claimant's medical records must show both a positive BeLPT or BeLTT *and* a diagnosis of CBD for the claim to be treated as one for Part E CBD. *Id.* at 2-1000.9. Regardless of the claimant's alleged illness and the manner in which the claims examiner evaluates it, Part E requires the claimant to prove that it is "at least as likely as not" that his exposure to toxic substances caused his illness. *Id.*

## 2. *Adjudication Process for EEOICPA Claims*

After a claimant submits an application for benefits, the OWCP district office issues a recommended decision informing the claimant of its recommended findings of fact and

3

conclusions of law. 20 C.F.R. §§ 30.300, -.306. Thereafter, the claimant may file written objections to the recommended decision with the Final Adjudication Branch ("FAB"). *Id.* § 30.310. The FAB will consider any objections and issue a final decision on the claim. *Id.* §§ 30.300, -.316. The claimant then has 30 days to request that the FAB reconsider its decision. *Id.* § 30.319(a). "If the FAB denies the request for reconsideration, the FAB's original decision is considered 'final' on the date the request is denied . . . ." *Id.* § 30.319(c)(2).

At any time thereafter, a claimant may file a written request with the Director of the DEEOIC to reopen a claim based on new evidence. *Id.* § 30.320(b). If the Director decides that the matter raised by the request is material, the Director will reopen the claim and return it to the district office for further development. *Id.* § 30.320(b)(1). The Director's decision as to whether to reopen a claim is not subject to administrative review. *Id.* § 30.320(c).

### B. **Factual and Procedural Background**

Houston worked for the DOE in various roles at the Paducah Gaseous Diffusion Plant ("PGDP") from July 7, 1975, until June 13, 2003. (Administrative R. 224, DN 17-1 [hereinafter AR]). Houston claims that he was exposed to toxic substances during that time, and that he developed several illnesses as a result. (*See, e.g.*, Compl. ¶¶ 9-12, DN 1). For the past several years, Houston has sought benefits under the EEOICPA for his illnesses. (*See, e.g.*, AR 831-35, DN 17-2). The attempts relevant to his claim for judicial review are as follows:

On July 10, 2014, Houston filed a claim under Part E of the Act, alleging that he developed sarcoidosis in his eye as a result of his employment at the PGDP. (AR 677). The district office recommended that the claim be denied because Houston failed to present evidence showing that work-related exposure to toxic substances caused his illness. (AR 634-35).

Before the FAB reviewed Houston's sarcoidosis claim, however, it held a hearing at which Houston's authorized representative presented new evidence related to that claim. (AR 552, 580-617). Specifically, the representative submitted "a medical progress note" signed by a doctor "documenting that [Houston's] sarcoidosis [was] affecting [his] lungs." (AR 552).

Based on this evidence, the FAB remanded Houston's case to the district office for further development. (AR 552-53). The remand order directed the district office to investigate Houston's diagnosis of sarcoidosis in his lungs, inform him that his sarcoidosis diagnosis *could* be a misdiagnosis for CBD, and explain the criteria he must establish to prevail on a claim for CBD under Parts B or E. (AR 553). Importantly, Houston sought and was denied benefits for CBD under Parts B and E in 2012, and the FAB's remand order did not "reopen" those claims—it simply informed him of the criteria he must establish to prevail on those claims. (AR 831-35).

Consistent with the remand order, the district office investigated Houston's lung-based sarcoidosis claim to determine whether his sarcoidosis diagnosis was a misdiagnosis of CBD. It initially attempted to contact Houston's physician to obtain additional information regarding his lung-based diagnosis of sarcoidosis, but received no response. (AR 546-47). As a result, the district office referred Houston's case to a contract medical consultant ("CMC"), who determined that Houston's medical records supported a diagnosis for sarcoidosis of the lungs *and not* a misdiagnosis for CBD. (AR 396, 497). In light of that conclusion—which essentially closed the district office's investigation of a Part B claim for CBD[3]—the district office attempted to determine whether Houston had a viable CBD claim under Part E. It reviewed Houston's prior BeLPT and BeLTT, both of which produced normal results, and asked Houston and his

---

[3] This concluded the district office's investigation of Houston's Part B claim for CBD, as his sarcoidosis diagnosis was clearly not a misdiagnosis for CBD and he presented no new evidence establishing the statutory criteria necessary to prevail on a Part B claim for CBD.

representative to submit medical evidence as to whether his steroid use might have impacted those tests. (AR 378-88). Neither Houston nor his representative produced any evidence on that issue, so the district office closed its investigation of Houston's Part E claim for CBD and sought information related to Houston's Part E claim for sarcoidosis. (AR 2032-73). The district office reviewed Houston's record of employment at the PDGP and Site Exposure Matrices ("SEM") so as to determine whether Houston's exposure to toxic substances caused his illness. (AR 389). It also asked Houston to present additional evidence that might establish that he was exposed to toxins associated with his claimed condition, but Houston did not produce any material evidence in response. (AR 642-50).

After this extensive investigation, the district office issued a decision recommending the denial of Houston's claims. (AR 364-74). Specifically, the district office noted that it was required to evaluate Houston's Part B claim for sarcoidosis as a Part B claim for CBD, but that the "[m]edical evidence in [his] file [was] insufficient to establish" a diagnosis of CBD under Part B or to invalidate the FAB's 2012 decision denying his Part B claim for CBD. (AR 366-67). The district office then reasoned that it need not evaluate any claim that Houston might have for CBD under Part E because he never produced "affirmative evidence in the form of a positive" BeLPT or BeLTT. (AR 367). As a result, the district office evaluated whether it was "as least as likely as not" that Houston's exposure to toxic substances at PDGP caused his lung-based sarcoidosis and concluded that it did not. (AR 367).

On March 15, 2016, the FAB issued a final decision in which it agreed with the district office's recommendation. (AR 224-29). Like the district office, the FAB noted that sarcoidosis is not compensable under Part B. (AR 224). It then declined to evaluate whether Houston had a claim for CBD under Part B (which it was required to do per the DEEOIC's procedure manual

6

given that Houston had sarcoidosis and was presumed to have been exposed to beryllium while working at the PGDP, *see* Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015)), reasoning that Houston had presented "no additional information which would warrant the reopening of" the 2012 decision denying that claim. (AR 224). Further, because Houston failed to present a positive BeLPT or BeLTT, the FAB evaluated his Part E claim as a claim for sarcoidosis rather than CBD and found that he had failed to present evidence establishing a causal connection between that illness and his work at the PDGP. (AR 229).

Not long thereafter, Houston's representative submitted a request for reconsideration of the FAB's final decision. (AR 211). Although the FAB decision only assessed his claim for sarcoidosis, Houston's representative styled the request as seeking reconsideration of the FAB's denial of Houston's claims for sarcoidosis and CBD. (AR 211). In addition, Houston's filings pertinent to his reconsideration request focused entirely on CBD. (AR 8-105).

The FAB denied Houston's reconsideration request, thereby finalizing its earlier decision. In its decision, the FAB noted: "There are no new medical records to confirm a diagnosis of sarcoidosis in the lungs related to toxic substance exposure. The arguments made to treat sarcoidosis as CBD are not new and they are not supported by the evidence of record." (AR 6). The FAB also reiterated that Houston's claims for CBD had previously been denied, not reopened, and were therefore not the subject of his request for reconsideration. (AR 5).

Houston subsequently filed the present action for judicial review of the FAB's March 15, 2016, decision. (Compl. ¶ 1). Houston's petition for judicial review is ripe for adjudication.

## II.　**JURISDICTION**

The Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

7

### III. STANDARD OF REVIEW

Because Part B of the EEOICPA does not contain provisions allowing for or precluding judicial review, courts use the APA's "arbitrary and capricious" standard when reviewing the FAB's final decisions. *See, e.g.*, *Freeman v. U.S. Dep't of Labor*, 653 F. App'x 405, 409 (6th Cir. 2016) (citations omitted). Arbitrary-and-capricious review is deferential. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). Claimants contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding & Mach. Co. v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987) (citations omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency['s] [decision is] arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem . . . .").

Part E of the Act contains a provision allowing for judicial review of final decisions, and the Sixth Circuit has interpreted that provision as mirroring the APA's arbitrary and capricious standard. *See Watson v. Solis*, 693 F.3d 620, 623-24, 626 (6th Cir. 2012) (analyzing why DOL did not act arbitrarily and capriciously in denying a Part E claim). That provision states:

> A person adversely affected or aggrieved by a final decision of the Secretary under [Part E] may review that order in the [proper] United States district court in the district . . . by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court . . . may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious.

42 U.S.C. § 7385s-6.

### IV. DISCUSSION

The FAB's March 15, 2016 final decision contains three sub-decisions that are purportedly subject to review. These are the FAB's decisions to: (1) forego evaluation of

Houston's Part B claim for sarcoidosis as a Part B claim for CBD; (2) treat Houston's Part E claim as a claim for sarcoidosis; and (3) deny him benefits under Part E for sarcoidosis. (AR 224-29). Houston's filings focus on the first of these three decisions, as he argues that the FAB acted arbitrarily when it declined to review his Part B claim for sarcoidosis as a claim for CBD. (Pl.'s Reply Br. 3, DN 28 [hereinafter Pl.'s Reply]). Houston does not specifically raise objections to the FAB's other decisions; rather, he simply seeks judicial review of the March 15, 2016 decision "in [its] entirety." (Compl. ¶ 1). The DOL counters that the first sub-decision is not reviewable and that none of its decisions are arbitrary or capricious. (Def.'s Resp. Br. 18-20, DN 23). The Court will address each sub-decision in turn.

### A. FAB's Failure to Review Houston's Part B Claim for Sarcoidosis as a Claim Under Part B for CBD

Houston claims that the FAB acted arbitrarily and capriciously when it declined to review his Part B claim for sarcoidosis as a claim of Part B CBD. (Pl.'s Reply 3). In support of his position, Houston notes that the DEEOIC's procedure manual requires the FAB to evaluate sarcoidosis claims under Part B as claims for CBD *if* the claimant has "a documented history of beryllium exposure," and points out that he has such a history. (Pl.'s Reply 3); *see* Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015).

Houston's position is unavailing. As an initial matter, the Court cannot review the FAB's decision not to evaluate Houston's Part B sarcoidosis claim as a Part B claim for CBD because—per Houston's argument—that decision was only arbitrary insofar as it failed to comply with the DEEOIC's practice manual, an "agency guidance manual" that neither "prescribe[s] judicially enforceable duties" nor has the force of law. *See, e.g.*, *Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003) (noting that federal courts cannot review the sensibility of agency actions taken in violation of procedural rules contained in guidance manuals because such rules do not create

9

judicially enforceable duties). But even if the Court could review that decision, the Court would find it rational in light of the fact that Houston previously filed a Part B claim for CBD, the FAB reviewed and rejected that claim, and Houston failed to present new evidence substantiating a claim for Part B CBD when he submitted his Part B claim for sarcoidosis. (*See* AR 5-6, 831-35).

### B. FAB's Decision to Treat Houston's Part E Claim as a Claim for Sarcoidosis

The next sub-decision contested by Houston is the FAB's decision to evaluate his Part E claim as a claim for sarcoidosis rather than CBD. Though Houston makes no argument with respect to this claim, the Court assumes his position is that the FAB failed to follow the DEEOIC's practice manual—which requires the FAB to evaluate Part E claims for sarcoidosis as claims for CBD in some circumstances—when it adjudicated his claim.

This decision is not reviewable. Again, the DOL's practice manual does not have the force of law, and this Court cannot review the reasonableness of decisions made pursuant to it. *See Lowry*, 329 F.3d at 1022. If the Court could review the FAB's application of its own practice manual, however, it would find the decision rational. The practice manual states that the FAB "can evaluate a pulmonary sarcoidosis claim as CBD; however, a positive BeLPT or BeLTT is necessary to accept a diagnosis of . . . CBD under Part E." *See* Federal (EEOICPA) Procedure Manual, Chapter 2-1000.10 (Sept. 2015). Houston did not submit a positive BeLPT or BeLTT, so the FAB properly evaluated his Part E claim as one for sarcoidosis rather than CBD. *See Freeman*, 653 F. App'x at 410-11 (explaining that an agency's decision denying a claim on the ground that the claimant "was unable to provide evidence" supporting it is not arbitrary or capricious).

### C. FAB's Decision to Deny Houston's Part E Claim for Sarcoidosis

Finally, Houston appears to take issue with the FAB's disposition of his Part E claim for sarcoidosis. Houston makes no arguments regarding this claim in his filings.

10

The FAB's decision regarding Houston's Part E sarcoidosis claim was not arbitrary or capricious. The FAB rejected this claim on the ground that Houston failed to present evidence showing that it was at least as likely as not that he developed sarcoidosis as a result of his exposure to toxic substances while working at the PDGP. (AR 228). Prior to reaching this conclusion, the district office provided Houston with opportunities to establish exposure to toxic substances that might have caused sarcoidosis, but he failed to so. (AR 642-50). When it finally adjudicated the claim, the FAB carefully reviewed Houston's work history and SEMs and found that the worksites at which he worked or was present did not contain toxins "which could result in the health effects of sarcoidosis." (AR 228). In this way, the FAB followed all applicable regulations and considered all relevant aspects of Houston's sarcoidosis claim, but ultimately found that his medical records did not support that claim. This decision was therefore neither arbitrary nor capricious. *See Freeman*, 653 F. App'x at 410-11.

## V. CONCLUSION

In sum, the reviewable portions of the FAB's March 15, 2015 are neither arbitrary nor capricious. Accordingly, this case is **DISMISSED WITH PREJUDICE**, and the Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 26, 2018

cc: counsel of record

11